UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS LAWSON,       )   | |
| Plaintiff   )   | |
| vs.   )   | Case No. 2:09-cv-00315-IPJ-HGD |
| GREGG BARTLETT,       )   | |
| Defendant   )   | |

## MEMORANDUM OPINION

The plaintiff, Nicholas Lawson, hereinafter referred to as "the plaintiff," has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at Morgan County Jail in Decatur, Alabama. The plaintiff is currently incarcerated at Holman Correctional Facility in Atmore, Alabama. He names as sole defendant Morgan County Sheriff Gregg Bartlett. The plaintiff seeks monetary damages. In accordance with the usual practices of this court and 28 U.S.C. § 636 (b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

On June 11, 2009, the court entered an Order for Special Report, directing that a copy of the complaint in this action be forwarded to the defendant and requesting that he file a Special Report addressing the allegations in the plaintiff's complaint. (Doc. # 9). The defendant was advised that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56. *Id*. By the same Order, the plaintiff was advised that after he received a copy of the Special Report submitted by the defendant, he should file counter-affidavits if he wished to rebut the matters presented in the Special Report. *Id*.

On October 2, 2009, the defendant filed a Special Report. (Doc. # 13). The plaintiff was notified that the defendant's Special Report had been construed as a motion for summary judgment and he would have twenty (20) days to respond by filing affidavits and other material if he chose. (Doc. # 20). The plaintiff was also advised of the consequences of any default or failure to comply with FED. R. CIV. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

On March 15, 2010, the plaintiff filed a response to the defendant's motion for summary judgment. (Doc. # 22). The plaintiff's response is neither sworn nor made under penalty of perjury. *Id.* This document is clearly not an affidavit as required by FED. R. CIV. P. 56(e), nor does it satisfy the verification requirement of 28 U.S.C.

§ 1746. Consequently, the plaintiff's response will not be considered in determining the propriety of summary judgment. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 148 n.1 (11th Cir. 1990). To the extent "specific facts" are pled in the plaintiff's sworn complaint, however, they will be considered in opposition to the motion for summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1987).

### I.   SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with

evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  The Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## II.   SUMMARY JUSTMENT FACTS

Applying the above summary judgment standard to the evidence before the court, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the plaintiff.

In October 2008, a procedure for repair and maintenance was in effect for the Morgan County Jail and its facilities. (Doc. #13, Bartlett Aff. at 1-2). Additionally, there were individuals employed to repair and maintain the jail. *Id*. at 2. Pursuant to the policy, there was a Maintenance Work Order form that was to be prepared by detention deputies and forwarded to the maintenance department in those instances where the detention deputies observed or had been informed that parts of the jail needed repair. *Id*.

On October 13, 2008, at approximately 6:10 p.m., Alex Cooper, a detention deputy, was conducting a compliance check in the jail when some of the inmates in C4 housing unit informed him of a small puddle of water. (Doc. #13, Cooper Aff. at 1). After receiving complaints from other inmates about the water, Deputy Cooper examined the area and noted a blanket and sheet blocking the pipe chase. *Id*. Deputy Cooper asked Deputy Keers to prepare a Maintenance Work Order, which he did. *Id*.

On October 14, 2008, the plaintiff exited his cell at 3:00 a.m. for breakfast and slipped and fell on a puddle of water. (Compl. at 3 & 4). The plaintiff broke his collarbone and fractured his shoulder blade. (*Id*. at 4). He also suffered a seizure when his head hit the floor. (*Id*. at 4). A week before, the plaintiff noticed a leak coming from a closet and notified officers. (*Id*. at 3-4). The plaintiff was told work orders were placed, but the leak was not fixed. (*Id*. at 4). Instead, an officer placed a blanket underneath the door. (*Id*). The next day, water leaked from the closet and settled around the plaintiff's cell door. (*Id*). The plaintiff claims that defendant Bartlett failed to properly maintain the Morgan County Jail and seeks damages for his injuries. (*Id*. at 4).

Richard Ham was employed as a maintenance worker in the Morgan County Jail. (Doc. #13, Ham Aff. at 1). On October 14, 2008, he received a Maintenance Work Order to check and repair a water leak in the pipe chase in the C Pod housing unit between C-4-6 and C-4-8. *Id*. Ham inspected the area the same day and noted the water had been mopped but was unable to find the water leak. *Id*. He made a notation to recheck the area the next day. *Id*. He rechecked the area on October 15 and October 16, 2008, but no water or water leak was detected. *Id*. A copy of the October 13, 2008, work order and Ham's notes were submitted with the Special Report. (Doc. #13).

### III.  DISCUSSION

#### A.  Sovereign Immunity

To the extent the plaintiff's constitutional claims are brought against defendant Bartlett in his official capacity for money damages, the defendant's motion for summary judgment is due to be granted under the doctrine of sovereign immunity.  It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest."  *Id*. at 101.

In *Parker v. Williams*, the Eleventh Circuit Court of Appeals held that the Eleventh Amendment bars § 1983 lawsuits against county sheriffs sued in their official capacities.  862 F.2d 1471, 1475-76 (11th Cir. 1989), *overruled on other grounds by Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285 (11th Cir. 1998).  It was subsequently held that the sheriff's Eleventh Amendment immunity also extends to deputy sheriffs because of their "traditional function under Alabama law as the sheriff's alter ego."  *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1525-1527 (11th Cir. 1990).  Therefore, to the extent defendant Bartlett is sued in his official capacity as Sheriff of Morgan County, he is absolutely immune from monetary

damages liability in this action. The remainder of this discussion will address the plaintiff's claims for monetary relief against Defendant Bartlett in his individual capacity.

### B. Eighth Amendment – Conditions of Confinement[1]

The plaintiff complains that the water leak outside his cell was not repaired and he was injured as a result. The plaintiff states, "Sheriff Gregg Bartlett is responsible because his failure to run this facility properly has caused me to become physically impaired." (Compl. at 4).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], . . . (2) the defendants['s] 'deliberate indifference' to that condition . . . and (3) causation . . . ." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th

---

[1] It is unclear whether the plaintiff was a pre-trial detainee or a convicted prisoner when the allegations made the basis of this suit occurred. "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). However, "it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing *Cottrell v. Caldwell*, 85 F.3d at 1490).

Cir. 1993) (footnotes and internal citations omitted).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  While prison officials must furnish prisoners with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates,'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  As the Eleventh Circuit Court of Appeals observed, "The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration."  *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991)(citations omitted).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347.

The plaintiff does not allege that defendant Bartlett was personally aware of the water leak near his cell. The court can only surmise that the plaintiff attempts to implicate defendant Bartlett through the concept of *respondeat superior*. However, the doctrine of *respondeat superior* is unavailable in actions brought under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995). Nevertheless, "a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

The plaintiff has described only this one incident to support his assertion that defendant Bartlett failed to run the jail properly. He has not alleged any other incident prior to his slip and fall which would have put defendant Bartlett on notice concerning the hazardous condition at the Jail. Plaintiff's experience, by itself, does not demonstrate that Bartlett knew the plaintiff was subject to an unsafe condition of confinement and that there was a strong likelihood, as opposed to a possibility, that the plaintiff would be seriously harmed, and failed to act. Neither does the plaintiff allege that defendant Bartlett maintained customs or policies that resulted in deliberate indifference to the plaintiff's constitutional rights or that he directed his subordinates to act unlawfully or knew they would act unlawfully and failed to stop them.

Even if the plaintiff established a causal connection that linked defendant Bartlett to the unsafe condition, he has not shown that Bartlett was deliberately indifferent to it. The plaintiff does not dispute the following: (1) in October 2008, a policy for repair and maintenance was in effect at the Morgan County Jail; (2) there were individuals employed to repair and maintain the jail; and (3) there was a Maintenance Work Order form that was to be prepared by detention deputies and

forwarded to the maintenance department when the deputies observed or received information that parts of the jail needed repair. Additionally, the plaintiff does not dispute that on October 13, 2008, Deputy Keers completed a Maintenance Work Order form concerning the water leak near the plaintiff's cell and Richard Ham, a maintenance worker, inspected the area daily from October 14-16, 2008, but could not find the water leak.

There is no dispute that the plaintiff sustained serious injury after he slipped and fell due to the standing water outside his cell. At most, jail staff's failure to ascertain the source of the leak and repair the same before the plaintiff's fall was negligent. However, the law is clear that negligent conduct alone does not rise to an Eighth Amendment violation. *See Cagle v. Sutherland*, 334 F.3d 980, 987 (11th Cir. 2003). As such, defendant Bartlett's motion for summary judgment is due to be granted and the plaintiff's Eighth Amendment conditions of confinement claim is due to be dismissed with prejudice.

A Final Judgment in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 14th day of September, 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE